IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 14, 2004

## DEBORAH GRAHAM v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Cocke County**
**No. 27,620-III     Rex Henry Ogle, Judge**

_____

**No. E2004-00370-CCA-R3-PC - Filed December 30, 2004**

_____

The petitioner, Deborah Graham, appeals the trial courts denial of her petition for post-conviction relief. The single issue presented for review is whether the petitioner was denied the effective assistance of counsel at trial. The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which J. CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

James R. Hickman, Jr., Sevierville, Tennessee, for the appellant, Deborah Graham.

Paul G. Summers, Attorney General & Reporter; John H. Bledsoe, Assistant Attorney General; and Al Schmutzer, Jr., District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The petitioner is the twin sister of Denice Smith, who was married to the victim, Aaron Smith. The petitioner and Denise Smith were co-defendants at trial. On July 23, 1997, the victim was fatally wounded by a gunshot to the back of his head. An autopsy established that the victim had also been shot in the ear and waist. The evidence at trial established that the Smiths were involved in divorce litigation which included a custody battle over their two children. It was established that during the course of the litigation and about one year prior to the murder, the defendant Smith had threatened to kill the victim on three separate occasions in the event she lost custody of her children. There was also proof at trial that the fingerprints of the petitioner were found on the label of a package addressed and mailed to the victim in Gatlinburg from Miami, Florida. Before delivery of the package, postal officials were informed by a caller, who identified himself as Carl Sanders of Bismark, North Dakota, that the package contained illegal drugs. Upon opening the package in the presence of authorities, the victim remarked, "I've been set up." After a full investigation by the police, no charges were levied against the victim.

Other circumstances established that the defendant Smith had taken the two children to Florida where she met the petitioner, two men named George, and a third man by the name of Alexandro Rivera. One of the two Smith children, who testified as a witness for the state at trial, observed Rivera in the possession of a pair of handcuffs and overheard the petitioner admit that "they [had] hurt somebody," to which the defendant Smith said, "[I]t was easy." The child witness then heard Rivera reply, "No, we've killed somebody."

It was stipulated at trial that two days before the murder, the defendant Smith had rented a car while in Florida and had driven approximately twenty-five hundred miles over a five-day period. A state trooper from McMinn County, Tennessee, had records establishing that he had issued a speeding ticket to a person identifying himself as David Antonio Rivera of Miami within that time period. The officer recalled that one or perhaps two women were in the vehicle at the time. An investigation revealed that Alexandro Rivera had a false driver's license which bore the name David Antonio Rivera.

The opinion of this court in the direct appeal summarized a statement that the petitioner gave to New York police at the time of her arrest:

> Defendant Graham said that she and Alex borrowed the car, rented by Defendant Smith, to travel to Michigan. Alex and Defendant Graham planned to stop in Tennessee to pay a visit to the victim. Defendant Graham stated that Alex wanted to teach Aaron Smith a lesson, because Alex had heard that Aaron Smith was abusive to Defendant Smith and their children. Graham used Defendant Smith's Camp Acres card to gain entrance to the campgrounds and show Alex where Aaron Smith lived. Graham and Alex stayed at the campground for about ten minutes. Then, Alex drove Graham back to Gatlinburg and let her out in front of the Ramada Inn. Graham said that she thought that Alex was "just going to talk to Aaron and ask him if he wanted to fight someone besides women and children." Rivera returned two hours later, pale and upset. As they drove toward the interstate, Alex told Graham that he had gone back to the Smith house and entered through the garage. As Alex was going through the house, he found several guns. Aaron Smith returned home unexpectedly and surprised Alex. Alex told Graham that "he [Aaron Smith] surprised me. I had to cap him." Alex shot Aaron three times and then Alex went back into the house to make it look like someone had burglarized the home. Then, Alex threw two handguns in the woods and kept one handgun for himself.

State v. Deborah Graham & Denice Smith, No. E1999-02248-CCA-R3-CD, slip op. at 7 (Tenn. Crim. App., at Knoxville, March 29, 2001).

Later, the petitioner was found in possession of eleven pieces of jewelry which had been taken from the residence of the victim's mother on the same day of the murder. Another state witness, Martin Giovi, testified that he had lived with the petitioner for a period of time and that she had asked him on three or four separate occasions to kill the victim. He specifically recalled a conversation in August of 1997, when the petitioner said, "It is finally done. . . . Aaron is dead,"

explaining that she and her father had paid someone to kill the victim. Giovi recalled that the petitioner admitted that she had gone to the victim's residence and participated in the shooting of the victim in the driveway.

A female inmate in the Cocke County Jail testified that prior to trial she had overheard the defendant Smith say that she had hired her twin sister's boyfriend to kill the victim. The inmate said that she later talked with the petitioner who explained that her boyfriend, Alex, had "accidentally" shot the victim.

The petitioner and the defendant Smith were convicted of first degree murder of Aaron Smith. Each received a life sentence with the possibility of parole. This court affirmed the convictions and sentences on direct appeal. See id. On September 17, 2001, application for permission to appeal to our supreme court was denied.[1]

On April 15, 2002, the petitioner filed a petition for post-conviction relief alleging, among other things, that she was denied the effective assistance of counsel, that the state was guilty of prosecutorial misconduct, that her right to due process had been denied, and that she was denied her right to a fair and impartial jury and her right to a speedy trial. At the evidentiary hearing, Attorney Denise Stapleton, who represented the defendant Smith at trial, testified, as did Renfro B. Baird, III, who represented the petitioner at trial. Ms. Stapleton, who had filed a motion for severance, expressed concern that she was not adequately prepared to represent the defendant Smith and had been ineffective because she did not know until just before trial whether her client and the petitioner would be jointly tried. She recalled that there were over one hundred potential witnesses which were ultimately pared down to "a more reasonable number" and asserted that while she did the best she could under difficult circumstances, she did not "feel like that was good enough." When examined by the post-conviction judge, who had also conducted the trial, Attorney Stapleton, while conceding that the defendant Smith had been granted a continuance of several days just prior to trial in order to pursue a negotiated plea agreement, complained that the ruling requiring joinder one day prior to the trial was inadequate, thereby limiting her effectiveness. On cross-examination, Ms. Stapleton conceded that she had anticipated that the defendant Smith and the petitioner would be tried together, especially because each had received notice of the same trial date. She nevertheless expressed the firm belief that it would have been better for the defendant Smith to either go to trial by herself or be tried jointly with both the petitioner and Rivera. Ms. Stapleton was unable to articulate, however, any change in strategy, other than possibly having the defendant Smith testify, that would have occurred had the trials been severed. She also acknowledged that she had talked to almost all of the potential witnesses, had had time to adequately confer with the defendant Smith in preparation for trial, and had had the opportunity to consider the possible defenses. She described herself as "generally prepared." Ms. Stapleton was unable to recall whether Rivera was tried separately

---

[1]Alexandro Rivera was also convicted of first degree murder of Aaron Smith. See State v. Alejandro Rivera, No. E2002-00491-CCA-R3-CD (Tenn. Crim. App., at Knoxville, Dec. 1, 2003).

because he had given a statement to the police that implicated the defendant Smith.[2] She explained her belief that she had been ineffective in her representation of the defendant Smith as follows:

> I feel like I had to take a generalized approach with the proof and be ready for different contingencies, which I did do the best that I could. But . . . when I'm trying a case, . . . I know exactly who my witnesses are going to be, . . . I have my questions written out . . . . I have a theory that I'm trying to prove . . . . And I'm just generally a lot more prepared because I know who will be the witnesses, who will not; what statements are coming in, what statements are not; what evidence is coming in, what evidence is not.

Attorney Stapleton expressed particular concern that the petitioner, who was out of state, had even more difficulty with her preparation for trial. It was her belief that the petitioner "looked more guilty" than the defendant Smith.

Attorney Baird, who had tried hundreds of criminal cases and between ten and twenty homicides, testified that he had been involved in the representation of the petitioner for a year and a half prior to trial and recalled that the trial date had been continued two or three times, at least once at the request of the state. He described himself as having "worked really hard," having "interviewed a lot of witnesses," and being "really well prepared" before the state requested a continuance. It was his opinion that the petitioner would "have had a better chance at trial the first time around" than the last setting. Attorney Baird recalled filing several pre-trial motions including a motion to dismiss based upon the lack of a speedy trial, a motion to suppress the petitioner's pre-trial statement, a motion to sever, and motions to limit the introduction of other potential evidence. It was his opinion that the petitioner would have had a stronger defense if tried separately from the defendant Smith.

---

[2]See Bruton v. United States, 391 U.S. 123 (1968).

Attorney Baird, while conceding that he could have been more effective, testified that he was adequately prepared, anticipating "every type of scenario." Like Attorney Stapleton, he believed that his representation could have been better had he known earlier that the petitioner would have been tried jointly with the defendant Smith. He summarized his level of preparedness for the ultimate trial date as follows:

> [A]s far as putting the time in and talking to the witnesses and trying to be prepared as attorneys . . ., I think. . . that's correct [that I was as prepared as just before the last continuance]. I daresay that there's been a case in my career that I spent as much time on and worked as hard on as this case, and I guess shed more tears than this case. . . .
>
> But as far as time and preparation, . . . I can't think of any case I've ever had that I spent as much time as I did in this one.

Attorney Baird acknowledged that it was understood from the very beginning that the cases were to be tried together unless he was successful in his motion for severance. He conceded that after the motions for severance were denied the day before trial, neither he nor Attorney Stapleton asked for a continuance. It was his assessment that the defendant Smith chose not to testify when it was discovered that she sent letters to a fellow inmate at the jail which were "so damaging, . . . I would have been very reluctant to put her on the witness stand." It was his opinion that Attorney Stapleton effectively represented the defendant Smith.

At the conclusion of the evidentiary hearing, the post-conviction court ruled that both the petitioner and the defendant Smith had been effectively represented at trial. The court observed that the issues of severance and consolidation had been presented in the direct appeal, that neither the petitioner nor the defendant Smith had been able to establish prejudice as a result of the joint trial, and that the jury instructions required separate deliberations as to the petitioner and the defendant Smith, safeguarding against any "spill-over effect."

In this appeal, the petitioner argues that the trial court erred by denying relief because counsel for the defendant Smith admitted that under similar circumstances she had been ineffective and because her own counsel had learned that she would be tried jointly with the defendant Smith only two days before the trial. The petitioner argues that even though joinder of the two defendants was proper, as determined on direct appeal, her trial counsel was rendered ineffective by the lack of time to prepare after being informed of the ruling.

In a post-conviction proceeding, of course, the petitioner bears the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997).[3] Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). On appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the trial court. Bates v. State, 973 S.W.2d 615 (Tenn. Crim. App. 1997). When reviewing the application of law to those factual findings, however, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

On matters of strategy, the petitioner is not entitled to the benefit of hindsight. See Adkins v. State, 911 S.W.2d 334, 347 (Tenn. 1994). Appellate courts may not second guess a reasonably based trial strategy and cannot grant relief based upon sound, but unsuccessful, tactical decisions made during the course of the proceedings. Id. This deference to counsel applies, however, only when trial counsel has made the decisions after adequate preparations. See Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In this instance, neither counsel for the defendant Smith nor counsel for the petitioner sought a continuance after the denial of their motions for severance. At the evidentiary hearing, the complaints of Attorneys Baird and Stapleton were directed at the trial judge's failure to rule on the

---

[3]In 2003, the Post-Conviction Procedure Act was renumbered within the Code. It now appears at sections 40-30-101 through 40-30-122.

motion for severance until one or two days before trial and how that affected their performance. While the complaints of the petitioner in this proceeding suggest that this court should infer a general ineffectiveness on the part of counsel caused by the ruling on joinder, the only fault that can be directed toward trial counsel is his failure to seek a continuance of the trial based upon the timing of the denial of the motion for severance. Otherwise, the evidence in the record demonstrates overwhelmingly that the petitioner had seasoned counsel who had prepared extensively for trial and who, despite any complaints about the timeliness of the joinder ruling by the trial court, had provided representation well within the standards of the profession.

Most importantly, there is no indication of any prejudice. Even though trial counsel for the petitioner may have been disappointed by the content of the order denying a severance, all of the evidence in the record establishes that Attorney Baird was prepared for every possible alternative. The ruling of this court on direct appeal confirmed that the trial court had properly denied the motion for severance and that the petitioner and the defendant Smith were not entitled to separate trials. Moreover, had a motion to continue been filed by the petitioner or the defendant Smith, it is our view that the motion would not have been granted. For the verdict to have been overturned on that ground, the petitioner must have established that the trial court had abused its discretionary authority by insisting that the trial go forward. Finally, the record establishes that Attorney Baird could not have been any better prepared for the trial. As argued by the state, there is no indication in this record that a few days or a few weeks more would have enhanced the performance of the defense attorneys. In short, the petitioner has failed to establish that Attorney Baird was deficient in his performance or that the results of the trial might have been different had there been a request for a continuance made after the order of joinder.

Accordingly, the judgment is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE